# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CINDY F.,**[1] | Case No. 3:17-cv-2025-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Merrill Schneider, Schneider, Kerr, & Robichaux, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Cindy F. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

<h1 style="text-align:center">BACKGROUND</h1>

## A. Plaintiff's Application

Plaintiff filed an application for DIB on March 19, 2014, alleging she became disabled on August 1, 2013. AR 61. Born in 1969, Plaintiff was 43 years old at the alleged disability onset date and 46 years old at the time of her hearing. AR 72, 127. She completed high school and attended some college courses, but she did not obtain a college degree. AR 19. Plaintiff had past relevant work experience as a retail sales associate and assistant manager. AR 31-32. She alleged disability due fibromyalgia, migraines, and "menstrual issues." AR 156.

The Commissioner denied Plaintiff's application initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 80-90, 97-98. On April 28, 2016, a hearing was held before ALJ S. Andrew Grace, at which Plaintiff, her counsel, and Paul Morrison, a vocational expert ("VE"), were present. AR 15-36. In a decision dated August 11, 2016, the ALJ found Plaintiff not disabled. AR 61-73. The Appeals Council denied Plaintiff's request for review on October 20, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1-4; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2013, the alleged disability onset date. AR 63. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, migraines, obesity, anemia, diabetes mellitus, anxiety, and depression. *Id.* The ALJ further found that Plaintiff's hypertension, incontinence, obstructive sleep apnea, hidradenitis, hand tremors, and temporomandibular joint disorder ("TMJ") were non-severe. AR 63-64. At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or equaled the severity of one of the specific impairments listed in the regulations. AR 64-66.

The ALJ next determined Plaintiff's RFC and found that she could perform sedentary work, with the following limitations:

> She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. She is limited to simple, routine and repetitive tasks consistent with unskilled work. She is limited to low-stress work, which is defined as work requiring few decisions and few changes.

AR 66. At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. AR 71-72.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 72. Specifically, the ALJ found that Plaintiff could perform such representative occupations as charge account clerk, addresser, and telephone quotation clerk. *Id.* Accordingly, the ALJ found that Plaintiff was not disabled from August 1, 2013, through the date of the decision, August 11, 2016. AR 73.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to find several of Plaintiff's diagnoses severe impairments at step two; (B) finding Plaintiff's subjective symptom testimony less than entirely credible; (C) discounting the opinions of Plaintiff's treating doctor Linda Hungerford, MD, and mental health counselor Catherine Caruso, MSW, CSWA; (D) improperly evaluating

the lay witness testimony of Plaintiff's mother, Leslie M.; and (E) finding that Plaintiff was capable of performing other work in the national economy at step five.[2] Each is discussed in turn.

## A. Step Two

At step two, the claimant bears the burden of establishing that she has a severe impairment by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of all the claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a claimant has any severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not.

---

[2] In her reply brief, Plaintiff asserts that remand is warranted because the Commissioner failed to address Plaintiff's step three argument. The entirety of Plaintiff's discussion of this issue in her opening brief, however, is limited to: "At step three, the ALJ erred by failing to find that [Plaintiff]'s impairments meet or equal a Listing." Beyond this single sentence buried in the prelude to her argument section, Plaintiff did not put forward any analysis, argument, or evidence to support her contention. This was insufficient to present her argument to the Court in her opening brief. *See Western Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012) (noting that courts "will not do an appellant's work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support"); *Carmickle v. Astrue*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("[I]ssues not argued with specificity in briefing will not be addressed."); *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'"); *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (noting that courts "review only issues which are argued specifically and distinctly in a party's opening brief," and "will not manufacture arguments for an appellant"). Plaintiff could not cure this deficiency in her reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (declining to address an argument made for the first time in a reply because it would be unfair to the opposing party).

Social Security Rule ("SSR") 96-8p, *available at* 1996 WL 374184; *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). When an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff argues that the ALJ improperly failed to find the following diagnoses were severe impairments: diabetic neuropathy, sleep apnea, hypertension, TMJ, hidradenitis, respiratory issues, incontinence, and hand tremors. With the exception of Plaintiff's respiratory issues and diabetic neuropathy, the ALJ expressly found those impairments were not severe at step two because they caused no more than a minimal effect on Plaintiff's ability to perform basic work activities. AR 63-64. Plaintiff's conclusory assertions to the contrary are unpersuasive.

Beyond simply pointing to a host of diagnoses scattered throughout the medical record, Plaintiff does not advance a single functional limitation that the ALJ failed to consider in the sequential analysis.[3] A diagnosis alone does not establish the severity of an impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Moreover, the ALJ considered all of Plaintiff's impairments at the subsequent steps of the sequential analysis and in his summary of the medical evidence. AR 64-70. Thus, even assuming the ALJ erred at step two, that error would have been harmless. *Lewis*, 498 F.3d at 911; *see also Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (the party appealing the ALJ's decision bears the burden of establishing harm).

---

[3] Plaintiff asserts for the first time in her reply that the RFC was deficient because the impairments omitted at step two caused additional pain symptoms; necessitated some undefined, yet disabling, exertional and manipulative limitations; and required Plaintiff to take additional breaks. As discussed in footnote two, supra, the Court will only consider arguments properly raised and supported in Plaintiff's opening brief.

**B. Symptom Testimony**

Plaintiff argues the ALJ erred in finding Plaintiff's subjective symptom testimony "not entirely consistent with the medical evidence and other evidence in the record." AR 67.

**1. Legal Standard**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new

rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the

reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of

an individual's character," and requires the ALJ to consider of all of the evidence in an

individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The

Commissioner recommends that the ALJ examine "the entire case record, including the objective

medical evidence; an individual's statements about the intensity, persistence, and limiting effects

of symptoms; statements and other information provided by medical sources and other persons;

and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner

recommends assessing: (1) the claimant's statements made to the Commissioner, medical

providers, and others regarding the claimant's location, frequency and duration of symptoms, the

impact of the symptoms on daily living activities, factors that precipitate and aggravate

symptoms, medications and treatments used, and other methods used to alleviate symptoms;

(2) medical source opinions, statements, and medical reports regarding the claimant's history,

treatment, responses to treatment, prior work record, efforts to work, daily activities, and other

information concerning the intensity, persistence, and limiting effects of an individual's

symptoms; and (3) non-medical source statements, considering how consistent those statements

are with the claimant's statements about his or her symptoms and other evidence in the file. *See*

*id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons

for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d

at 883.

### 2. Plaintiff's Symptom Allegations

In an April 2014 function report, Plaintiff alleged that her "extreme menstrual bleeding and cramps" prevented her from leaving her home for two-to-four days; her fibromyalgia limited the amount of time she could stand, walk, and sit, as well as her ability to lift, grasp, and bend; and her migraines required her to sit in a dark, quiet room until they passed. AR 167. Plaintiff reported that she spent the majority of her time sitting or lying on the couch. AR 168. She performed housework in ten-to-fifteen-minute intervals throughout the day, and she would unexpectedly fall asleep due to side effects from her medication. *Id.* Plaintiff cooked simple meals three times per day that took up to fifteen minutes to prepare. AR 169. She could not drive because her medication made her drowsy. AR 170. Plaintiff shopped for groceries once a week for an hour at a time with the assistance of an electric shopping cart. AR 170, 173. She enjoyed such hobbies as reading, watching television, sewing, and playing video games; however, she primarily watched television because her other hobbies hurt her hands too much. AR 171.

Plaintiff asserted that she could: walk for 100 yards before needing to rest for ten to twenty minutes; comfortably lift up to ten pounds; stand for fifteen minutes; sit for twenty minutes; and climb "a few stairs." AR 172, 174. Plaintiff stated that she could follow written and spoken instructions "very well," finish what she started, get along with authority figures "fine," and was never fired from a job because of problems getting along with others. AR 172. Finally, Plaintiff reported handling stress and changes in routine "ok," but that she had been experiencing panic attacks. AR 173.

At her April 2016 hearing, Plaintiff testified that she was unable to work primarily due to her fibromyalgia. AR 21. She stated she could be active for up to twenty minutes at a time before needing to take a break and could type for only ten to fifteen minutes before her hands cramped up. *Id.* Plaintiff's pain was primarily located in her arms and legs, but she also experienced back

PAGE 11 – OPINION AND ORDER

pain after standing for long periods of time. AR 22. Her pain level changed from day to day, but "[i]t always ache[d] everywhere all the time." AR 30. Plaintiff experienced pain "flare ups" from physical activity. *Id.* The "really bad" flare ups would leave Plaintiff bed-ridden for "a day or two." AR 31. Her migraines got "way better" after her doctor put her on a new medication. AR 23, 29. Plaintiff reported the quality of her sleep improved after she was prescribed a CPAP machine, but she was still only able to sleep for up to 45 minutes at a time due to pain. AR 25. She took metformin for her type-II diabetes and noticed that her blood sugar levels improved after she started paying better attention to her diet. AR 25-26.

Plaintiff started attending mental health counseling in October 2015 after her depression became so severe that she thought of just "giving up." AR 27. Prior to then, she managed her depression with medication and never required an increase in her dosage. AR 27-28. Plaintiff stated her ability to complete chores depended on whether she had enough energy, but her roommates were understanding and appreciative of when she was able to "get something done" around the house. AR 28. She could grocery shop with the help of her roommates and an electric scooter; however, she was so exhausted after a shopping trip that she would "have to call it a day." *Id.* Finally, Plaintiff testified to experiencing problems with her attention span and memory "all the time," such as losing her place in a book, losing track of what bill she was supposed to be paying, or forgetting where she was going while driving. AR 30.

### 3. Analysis

The ALJ found Plaintiff's symptom allegations to be inconsistent with her receipt of conservative and effective treatment, her activities of daily living, and the objective medical evidence. AR 69-70.

### a. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Furthermore, evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

The ALJ found that Plaintiff's doctors "prescribed pain medications and recommended more activity, but they ha[d] not recommended any more significant treatment" for her fibromyalgia. AR 70. The ALJ's finding is not clear and convincing. "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). As was the case in *Revels*, here "[t]he ALJ provided no explanation why he deemed Plaintiff's treatment 'conservative' for fibromyalgia." 874 F.3d at 667. Because the ALJ did not specify what "more aggressive treatment options [were] appropriate or available," it would be illogical to discredit Plaintiff "for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v.*

*Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010).[4] Without more, the ALJ's characterization of

Plaintiff's fibromyalgia care as "conservative" is not supported by substantial evidence and does

not suffice as a clear and convincing reason to reject her symptom testimony.

The ALJ's finding that Plaintiff's migraines were effectively treated by conservative care

will not be disturbed. Although Plaintiff occasionally took Vicodin, she primarily managed her

migraines with ibuprofen. AR 70, 274, 310. At times, Plaintiff's migraines increased in

frequency and intensity. Her symptoms, however, generally responded well to changes in

medication. For example, in April 2014, Plaintiff complained to Dr. Judith Lindsey that Plaintiff

had been experiencing migraines for years. AR 267. Noting that Plaintiff was not taking a

migraine preventative, Dr. Lindsay prescribed topiramate. *Id*. The following month, Plaintiff

made no complaints about her migraines, and, in August 2014, she reported to Dr. Lindsey that

her migraines were significantly better. AR 271-74. In December 2014, Plaintiff reported an

increase in the frequency and intensity of her migraines. AR 332. Dr. Lindsey prescribed

verapamil. AR 334. Plaintiff did not seek further treatment for her migraines for nearly one year,

when she saw Dr. Linda Hungerford for the first time to establish care in October 2015. AR 352.

---

[4] The Court notes that Dr. Judith Lindsey referred Plaintiff to physical therapy for fibromyalgia treatment in April 2014. AR 270. The following month, Plaintiff underwent an initial assessment with a physical therapist and a treatment plan was agreed upon, whereby Plaintiff would attend weekly sessions for three months. AR 256-64. Despite this agreement, there is no evidence that Plaintiff attended those sessions. *But cf.* AR 442-67 (Plaintiff successfully completed seven physical therapy sessions from October 2015 to February 2016 to treat her urinary stress incontinence). Such a discrepancy could cast doubt on Plaintiff's allegations. *Orn*, 495 F.3d at 638 ("[B]ecause a person's normal reaction is to seek relief from pain," a claimant's failure to follow a prescribed course of treatment may call into doubt their pain allegations.); *see also* SSR 16-3p, at *9. The ALJ, however, did not discuss Plaintiff's failure to follow through on physical therapy for her fibromyalgia, nor did he give Plaintiff an opportunity to explain this discrepancy. Accordingly, the Court cannot rely on this basis to uphold the ALJ's credibility determination. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Dr. Hungerford increased Plaintiff's dose of verapamil. AR 354. In February 2016, Plaintiff reported that she had been experiencing a migraine for three days. AR 415. Dr. Hungerford gave Plaintiff a toradol injection to abort her migraine and prescribed maxalt. AR 417.

At her hearing two months later, Plaintiff testified that her migraines had "gotten way better" since Dr. Hungerford changed her medication. AR 23. Plaintiff initially testified that she "had one migraine in the last month which is better than the three or four I was having a month before this new medication." AR 23. Plaintiff later stated that the last migraine she experienced was the "three-day one" that Dr. Hungerford prescribed new medication for. AR 29. Therefore, the ALJ finding Plaintiff's allegations of debilitating migraines inconsistent with her receipt of conservative and effective treatment is sufficiently clear and convincing and supported by substantial evidence.

Regarding Plaintiff's anxiety and depression, the ALJ found that Plaintiff's "lack of mental health treatment suggests the alleged persistence and intensity of her related symptoms are not as serious as alleged." AR 70. Specifically, the ALJ noted that Plaintiff was never psychiatrically hospitalized and did not commence mental health counseling until October 2015—nearly two years after her alleged disability onset. *Id.* The ALJ further found that "the records in [Plaintiff's] mental health counseling discuss[ed] situational stressors such as family conflict and housing stress rather than mental health symptoms." *Id.* Finally, the ALJ noted that Plaintiff "reported her depression and anxiety were under good control with psychotropic medications," and she testified that counseling "help[ed] a lot." *Id.*

Plaintiff asserts that there is no evidence that she experienced sustained relief from her depression and anxiety, and the ALJ erred by citing isolated examples of symptom improvement to disregard Plaintiff's waxing and waning symptoms. Far short of putting forward any reasoned

analysis, however, Plaintiff simply cites the entirety of her mental health counseling records to support her contention. Despite characterizing her mental health impairments as "debilitating," Plaintiff fails to identify any psychological limitation that the ALJ erroneously rejected. *Id.* As such, the Court upholds the ALJ's finding that Plaintiff's allegations concerning her psychological impairments were not supported by the record.

### b. Daily Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke*, 379 F.3d at 594 ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an

ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that Plaintiff's "daily activities [we]re not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 70. Specifically, the ALJ noted that Plaintiff reported she was able to prepare meals daily, clean, do laundry and dishes, shop for groceries once a week, handle her finances, read, watch television, sew, play video games, host friends in her home once or twice a week, and care for four small dogs. *Id.* The ALJ further noted that in October 2014, Plaintiff "reported she did not need help with dressing, eating, transferring herself from seated to standing, getting in and out of bed, preparing meals, transportation, shopping, taking her medicine, managing her finances, or other activities of daily living." *Id.* (citing AR 310-11).

The ALJ's reliance on Plaintiff's daily activities was erroneous. The ALJ never made a finding that Plaintiff's reported activities met the threshold level for transferable work skills, and the limited manner in which Plaintiff reportedly carried out her daily activities do not demonstrate greater functioning than Plaintiff alleged. For example, although Plaintiff was able to prepare meals daily and perform household chores, she allegedly could do so for only very short periods of time and required frequent breaks. *Compare* AR 168-71, *with* AR 21-22. Plaintiff required the assistance of an electric scooter to shop for groceries, and reported that she was unable to read, sew, and play video games often because those activities hurt her hands too much. AR 21, 171-73. Plaintiff walked her four small dogs when her pain levels permitted; however, she had "a little indoor grass area with kitty litter under it" for the times she was unable to take her dogs out for a walk. AR 29. In context, Plaintiff's minimal activities are not

inconsistent with her symptom testimony. As such, the ALJ's reliance on Plaintiff's activities of daily living was not a clear and convincing reason to discredit Plaintiff's symptom allegations.

### c. Objective Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883. Here, the ALJ noted that although Plaintiff "had generalized tenderness at times," numerous unremarkable physical examinations throughout the record indicated findings of no tenderness to the extremities or spine, full range of motion in all joints, normal gait and station, and normal muscle strength and tone. AR 69, 211, 215, 219, 255, 269, 276, 393, 417.

Presumably, the ALJ cited Plaintiff's normal physical examination findings to discredit the allegations of pain Plaintiff attributed to her fibromyalgia. As discussed, the ALJ's only other reason for discrediting Plaintiff's fibromyalgia symptoms—Plaintiff's receipt of effective and conservative treatment—was erroneous. An ALJ's reliance on a lack of supporting objective medical evidence, however, cannot serve as the sole basis for rejecting a claimant's allegations. *Robbins*, 466 F.3d at 883. As such, the ALJ erred to the extent he discounted Plaintiff's fibromyalgia-related testimony.

## C. Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the opinions of her primary care physician, Dr. Hungerford, and her mental health therapist, Catherine Caruso.

### 1. Dr. Hungerford

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If, however, a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts*, 66 F.3d at 184.

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

In April 2016, Dr. Hungerford completed an opinion form drafted by Plaintiff's attorney. AR 434-37. Dr. Hungerford noted that she began treating Plaintiff in October 2015. AR 434. The doctor opined that Plaintiff could stand or walk for 30 minutes at a time but for less than two hours in an eight-hour workday and could sit for less than two hours in an eight-hour day.

AR 435. Dr. Hungerford further concluded that Plaintiff could never lift more than ten pounds, push or pull, climb, balance, stoop, bend, kneel, crouch, crawl, reach, and handle. *Id.* Dr. Hungerford opined that Plaintiff was markedly limited in her social functioning and activities of daily living. AR 436. Finally, the doctor estimated that Plaintiff's attention and concentration would be impaired 20 percent of the time and that she would miss at least two full workdays per month due to pain. AR 437. Dr. Hungerford's opinion was contradicted by the opinion of reviewing consultant Dr. Myung Song. Therefore, the ALJ needed to provide specific and legitimate reasons for discounting Dr. Hungerford's opinion.

The ALJ gave "limited weight" to Dr. Hungerford's opinion because the "extreme limitations" she assessed were inconsistent with her own treatment notes showing Plaintiff "had no spinal tenderness, normal musculoskeletal range of motion, no joint swelling or tenderness, and normal gait." AR 71 (citing AR 393). "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Plaintiff notes that the symptoms of fibromyalgia can wax and wane, *see* SSR 12-2p, *available at* 2012 WL 3104869, and argues that the ALJ erred by cherry-picking Dr. Hungerford's treatment notes from when Plaintiff was experiencing a relatively good day to reject the doctor's opinion. In support, Plaintiff notes that on January 19, 2016—less than one week before Dr. Hungerford's treatment note cited by the ALJ—Plaintiff reported body-wide pain, soreness, exhaustion, and that she "does not really ever have good days." AR 464. Plaintiff further argues that she had extreme limitations because in May 2014 she told her physical therapist that she could no longer hold a book, required 30 minutes of rest after ten to fifteen minutes of activity, showed signs of deconditioning, and lost her balance when she bent forward. AR 258, 260, 263.

As the Commissioner notes, however, Plaintiff's allegations of always being in pain and never really experiencing good days are inconsistent with her argument that Dr. Hungerford's unremarkable examination findings can be explained away by the waxing and waning of her symptoms. AR 21, 352, 464. Indeed, Plaintiff was seen by Dr. Hungerford only three times before the doctor rendered her extremely limiting opinion. *See* AR 351-55 (October 2015), 390-94 (January 2016), 414-18 (February 2016). Significantly, Plaintiff made fibromyalgia related complaints at her first appointment with Dr. Hungerford, but she did not do so at her subsequent appointments. *See* AR 352 (Plaintiff reporting "she's always in pain" from fibromyalgia), 390 (complaining primarily of cysts at annual exam), 415 (complaining of loose stool from taking metformin, a three-day migraine, and recurring cysts). Given Plaintiff's assertion that her inability to work was primarily due to her constant fibromyalgia pain, one would expect she would have relayed those concerns to her primary care physician. Moreover, Plaintiff's complaints to her physical therapist more than one year before she began seeing Dr. Hungerford does not explain why Dr. Hungerford did not document similar issues in her own treatment notes. It was reasonable for the ALJ to expect some objective findings in Dr. Hungerford's treatment notes that substantiated the extreme limitations she assessed. Accordingly, the ALJ's finding that Dr. Hungerford's opinion was inconsistent with her own clinical findings was a specific and legitimate reason to discount the doctor's opinion.

## 2. Ms. Caruso

Plaintiff challenges the ALJ's assessment of the opinion of Plaintiff's licensed clinical social worker, Ms. Caruso. SSR 06-03p[5] in effect at the time Plaintiff filed her claim defined

---

[5] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not

"acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed

optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care

providers who are not "acceptable medical sources," such as "nurse practitioners, physician's

assistants, chiropractors, audiologists, and therapists," are still considered "medical sources"

under the regulations, and the ALJ can use these other medical source opinions in determining

the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to

work." 20 C.F.R. § 404.1513(d) (2013). Because Ms. Caruso is a licensed clinical social worker,

she is considered an "other" medical source. *See* SSR 06-03p, *available at* 2006 WL 2329939.

An ALJ may not reject the competent testimony of "other" medical sources without

comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent

testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness

for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw

inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*,

100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is

---

just acceptable medical sources, can provide evidence that will be considered medial opinions.
*See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In April 2016, Ms. Caruso completed a functional assessment form provided by Plaintiff's attorney. AR 429-33. Ms. Caruso noted that she had been providing Plaintiff mental health counseling "every two to three weeks" since November 2015. AR 429. Ms. Caruso detailed that Plaintiff's previous clinician diagnosed adjustment disorder with mixed anxiety and depressed mood. *Id.* Plaintiff's symptoms included difficulty sleeping, trouble concentrating, loss of appetite, irritability, fatigue, loss of pleasure, hopelessness, and low mood most days. *Id.* Ms. Caruso assessed Plaintiff with moderate difficulties in concentration, persistence, or pace, due to racing thoughts from anxiety; social functioning, due to Plaintiff's struggles with leaving her home on her own; and activities of daily living, due to Plaintiff's difficulty prioritizing her health and feelings of hopelessness and low self-worth. AR 431. The counselor further opined that Plaintiff would "likely shut down if faced with additional stress." *Id.*

Regarding specific work-related functions, Ms. Caruso found that Plaintiff was moderately limited in her ability to: maintain attention and concentration for extended periods; stay on schedule and maintain regular attendance; sustain an ordinary routine without special

supervision; work with other without being distracted by them; interact appropriately with the public; get along with coworkers without distracting them; and maintain socially appropriate behavior and cleanliness. AR 432. Ms. Caruso assessed marked limitations in Plaintiff's ability to complete a normal workday or workweek without interruptions from her psychological symptoms; perform at a consistent pace without an unreasonable number of rest periods; accept and respond to criticism from supervisors; and respond appropriately to changes in the work setting. *Id.*[6] Ms. Caruso opined that Plaintiff would need to take unscheduled work breaks because she "could become overwhelmed and need to remove herself from situations frequently." *Id.* Finally, Ms. Caruso opined that whether Plaintiff would miss two or more workdays in a month was "speculative," but from her experience Plaintiff would likely miss shifts due to her need "to attend to her health and mental health above [all] else." AR 433.

The ALJ gave Ms. Caruso's opinion "partial weight" because her assessment of marked limitations was "not consistent with the [treatment] records showing routine care, some improvement, and many situational stressors." AR 71. The ALJ further found Ms. Caruso's opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." *Id.* An ALJ may reject a medical opinion that is inconsistent with the medical source's own treatment notes. *Ghanim*, 763 F.3d at 1161. Furthermore, an ALJ may reject an opinion if that opinion is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228.

The ALJ's finding that Ms. Caruso's marked limitations were inconsistent with the treatment records demonstrating that Plaintiff's symptoms were caused by situational stressors

---

[6] The Mental Residual Functional Capacity form provided to Ms. Caruso by Plaintiff's attorney does not define the term "markedly limited," but it is the most extreme degree of limitation listed in that section of the form. AR 432.

unrelated to her mental health impairments and were effectively treated with routine care is supported by substantial evidence. As discussed, Plaintiff did not seek mental health counseling until more than two years after she alleges she became disabled. Prior to then, Plaintiff managed her psychological symptoms with medication, and never required any adjustments to her medication. AR 27-28. Upon beginning therapy, Plaintiff often complained that her psychological symptoms were largely due to financial and housing issues. *See*, *e.g.*, AR 488 (roommates not contributing to the housework), 492 (worried if partner did not get more hours at work, they would lose apartment), 517 (feeling less anxious after obtaining housing), 539 (ordered to vacate housing). After attending sessions with Ms. Caruso for five months, Plaintiff reported that her counseling was helping a lot. AR 26, 429. Dr. Caruso's treatment notes further demonstrate that Plaintiff was responding well to counseling. *See* AR 488 (getting out of the house more on her own), 500 (able to self-regulate emotional responses with deep breathing), 502 (Plaintiff was in a "positive space today"), 506 (Plaintiff engaged, open, and excited to practice new coping skills).

Although Plaintiff argues for her preferred interpretation of the record, the ALJ's finding that Ms. Caruso's assessment of marked limitations inconsistent with her own treatment notes was a rational interpretation of the record. *See Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision."). Plaintiff also contends that Ms. Caruso's opinion was well-explained because she listed Plaintiff's psychological symptoms and stated Plaintiff could become overwhelmed by the stress of a simple job. The Court agrees with the Commissioner, however, that Dr. Caruso's list of Plaintiff's symptoms, along with the bare assertion that Plaintiff would become overwhelmed, "does not amount to a meaningful rationale of the assessed limitations, particularly where the

basis for assessing such extreme limitations in some areas is not apparent from Ms. Caruso's counseling records."

Finally, Plaintiff asserts that the ALJ failed to consider SSR 06-03p in his evaluation of Ms. Caruso's opinion. Besides the fact that Plaintiff does not argue with any specificity how the ALJ failed to consider the regulation, "SSR 06-03p merely instructs the ALJ to *consider* the factors, and does not state that the ALJ must explicitly analyze every factor individually." *Marshall v. Colvin*, 2016 WL 4059660, at *9 (D. Or. July 29, 2016) (emphasis in original). Therefore, the Court finds the ALJ did not err because he gave germane reasons for assigning limited weight to Ms. Caruso's opinion.

## D. Lay Witness Testimony

The standards for evaluating law witness nonmedical testimony are the same as discussed above in evaluating lay witness medical testimony. Such testimony cannot be disregarded without comment, the ALJ must provide a germane reason to discount the testimony, but reasons provided for discounting other similar testimony can be translated to discount a lay witness's testimony. *See Stout*, 454 F.3d at 1053; *Molina*, 674 F.3d at 1114-15, 1122.

Plaintiff's mother, Leslie M. ("Leslie"), completed a third-party function report in May 2014. AR 175-82. Leslie detailed that she saw Plaintiff once or twice per week to take her shopping or to a doctor's appointment. AR 175. Leslie reported that, due to pain, Plaintiff could not sit or stand for "very long," and her sleep was impacted. AR 175-76. Plaintiff was able to perform household chores and prepare simple meals, but she could only be active for ten to fifteen minutes at a time and needed frequent breaks. AR 176-77. Plaintiff could drive "short trips" in the car and shopped for one hour per week with the assistance of an electric shopping cart. AR 178, 181. Plaintiff read, watched television, and visited with others "daily," but she could no longer garden. AR 179. Leslie detailed that Plaintiff did not require reminders or

accompaniment to go places and had no problems getting along with others. AR 179-80. Leslie explained that Plaintiff could finish what she started, followed written and spoken instructions "well," and was never fired from a job because of problems getting along with others. AR 180. Finally, Leslie reported that Plaintiff did not handle stress or changes in routine well. AR 181.

The only reason provided by the ALJ for rejecting Leslie's function report was that "the severity alleged [wa]s not entirely supported by the medical evidence of record." AR 71. In this Circuit, inconsistency with the objective medical evidence is considered a germane reason for rejecting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A lack of support or corroboration by the medical record, however, is not a germane reason to discount lay witness testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by the medical evidence in the record."); *Hudson v. Astrue*, 2013 WL 1100998, at *8 (D. Or. Mar. 15, 2013). In other words, the ALJ can "reject [lay witness] reports . . . based only on affirmative contradictory evidence in the medical record, not absence of supporting evidence." *Rivera v. Colvin*, 2013 WL 6002445, at *4 (D. Or. Nov. 12, 2013); *cf.* SSR 16-3p, at *6 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record . . . includ[ing] statements from . . . other sources that might have information about the individual's symptoms").

The Commissioner argues that the ALJ's reasoning should be upheld because there is little medical evidence supporting the physical limitations alleged by Leslie. The Commissioner's argument is unavailing. Lack of support or corroboration by the medical record is not a legally sufficient basis for discounting lay witness testimony, and the ALJ did not

identify any inconsistencies in the medical record as a basis for rejecting the lay witness testimony. *Bruce*, 557 F.3d at 1116. Therefore, the ALJ's stated reason for rejecting Leslie's testimony was erroneous.

The Commissioner argues that the error was harmless because the ALJ's reasons for discounting Plaintiff's subjective testimony regarding her symptoms are sufficient to discount Leslie's similar testimony. Review of Leslie's function report indicates that the limitations she put forward are predominantly related to Plaintiff's fibromyalgia pain symptoms. *See* AR 175-82.[7] The ALJ, however, failed to give sufficient reasons for discounting Plaintiff's subjective allegations relating to her fibromyalgia. As such, the ALJ's erroneous reasons for finding Plaintiff's fibromyalgia related symptom allegations cannot serve as a basis for finding that the ALJ's error with respect to Leslie's statements was harmless.

## E. Step Five

"While the claimant has the burden of proof at steps one through four, the burden of proof shifts to the [Commissioner] at step five to show that the claimant can do other kinds of work." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (citations omitted). The Commissioner can meet her burden at step five by determining the claimant's RFC and posing hypothetical questions to a VE that incorporate the claimant's limitations. *Id.* The VE lists jobs the hypothetical claimant is capable of performing, and the ALJ determines whether, "given the claimant's RFC, age, education, and work experience," if she is capable of performing other work in the national economy. *Id.* The Commissioner must determine that "specific jobs

---

[7] Leslie's description of Plaintiff's mental abilities is consistent with the RFC. *Compare* AR 180 (no problems following instructions or getting along with others, but difficulty handling stress and changes in routine), *with* AR 66 (RFC including no social limitations, but limiting Plaintiff to simple, low-stress work requiring few decisions and few changes).

exist[] in substantial numbers in the national economy that [a] claimant can perform despite [her] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). There is no bright-line rule for determining the number of jobs that qualify as a "significant" or "substantial" number in the national or local economy. *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528-29 (9th Cir. 2014).

Plaintiff contends that the ALJ erred at step five by failing to identify a significant number of jobs in the national economy. Plaintiff first argues that two of the three jobs the ALJ found Plaintiff capable of performing—charge account clerk and telephone quotation clerk—are incompatible with the RFC limiting Plaintiff to "simple, routine, and repetitive tasks consistent with unskilled work." AR 66. Per the *Dictionary of Occupational Titles* ("DOT"), those occupations require General Educational Development ("GED") Level 3 Reasoning. "[T]here is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *see also* DOT 205.367-014, *available at* 1991 WL 671715; DOT 237.367-046, *available at* 1991 WL 672194. The Commissioner argues that the ALJ's inclusion of "consistent with unskilled work" in the RFC makes *Zavalin*'s holding inapplicable. There is no material difference, however, between the RFC limitation of "simple, repetitive tasks" in *Zavalin*, and Plaintiff's RFC limitation to "simple, routine, and repetitive tasks consistent with unskilled work." If anything, the latter's inclusion of an additional limitation to unskilled work appears more restrictive on its face. Thus, the only job identified by the ALJ at step five consistent with Plaintiff's RFC is the addresser position. *See* DOT 209.587-010, *available at* 1991 WL 671797 (Level 2 Reasoning).

The addresser position is identified as having 7,400 positions nationally. Plaintiff argues that this number of positions does not constitute a significant number of jobs existing in the national economy. Plaintiff argues that 7,400 jobs should be deemed insignificant because the Ninth Circuit has stated that "the ALJ's finding that 25,000 national jobs is sufficient presents a close call." *Gutierrez*, 740 F.3d at 529; *cf. Beltran*, 700 F.3d at 390 (finding that 1,680 nationwide jobs are insignificant). The Commissioner responds that although the Ninth Circuit said 25,000 jobs was "a close call," the *Gutierrez* court nonetheless cited Eighth Circuit precedent holding 10,000 national jobs significant. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). In the absence of binding precedent, and given the Ninth Circuit's characterization of 25,000 jobs as a "close call," the Court finds 7,400 jobs in the national economy does not constitute a significant number of jobs. *See Lisa L. v. Comm'r of Soc. Sec.*, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (concluding that "the Court finds that 11,084 jobs does not meet the significant number standard"); *Watkins v. Comm'r Soc. Sec. Admin.*, 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016) (finding that "11,000 order caller jobs in the national economy does not represent a significant number"). Accordingly, the ALJ failed to meet the Commissioner's step five burden.

## F.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

As discussed, the ALJ erred in his evaluating of Plaintiff's and her mother's statements concerning Plaintiff's fibromyalgia-related limitations. On this record, however, the Court cannot conclude that further proceedings would serve no useful purpose. The ALJ should have the opportunity to properly evaluate Plaintiff's symptom allegations and resolve any ambiguities concerning Plaintiff's fibromyalgia, including reassessing Leslie's lay testimony and reformulating an appropriate RFC if necessary. On reconsideration, should Plaintiff's claim be determined at step five, the ALJ must determine if there are a significant number of other occupations in the national economy that Plaintiff is capable of performing.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED and

REMANDED for further proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

DATED this 13th day of February, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge